**Order entered October 8, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00372-CV

**AVPM CORP, D/B/A STONELEIGH PLACE, Appellant**
**V.**
**TRACY L. CHILDERS AND MARY RUTH TROUT, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-00556**

## OPINION AND ORDER
**Before the Court En Banc**

Before the Court is John L. "Lin" McCraw III's Motion to Recuse Justices Molly Francis and Craig Stoddart on the basis of campaign contributions received and publicly reported in January 2018. For the reasons detailed below, we find the motion to be lacking in merit and **DENY** same. Further, we **REFER** McCraw to the office of the General Counsel of the State Bar of Texas for possible disciplinary action.

Recusal is governed by rule 16 of the Texas Rules of Appellate Procedure, which effectively parallels rule 18b of the Texas Rules of Civil Procedure governing the recusal of trial court judges. *See* TEX. R. APP. P. 16; TEX. R. CIV. P. 18b. To comply with rule 16.3(b), McGraw's motion to recuse has been certified to the entire Court. Justice Francis and Justice Stoddart each determined not to recuse themselves and then certified this matter to the remaining Justices on the

Court. In other words, each member of the Court has considered the motion to recuse with Justice Francis removing herself from consideration of the motion with respect to herself and Justice Stoddart removing himself from consideration with respect to himself. *See* TEX. R. APP. P. 16.3(b); In re Dunn, 07-17-00084-CV, 2017 WL 1953221 *2 (Tex. App.—Amarillo, May 10, 2017, order) (per curiam).

## I. The Motion Appears to be Untimely

Texas Rule of Appellate Procedure 16 generally requires a motion to recuse to be filed "promptly" and, in all events, while the "case is pending." Decisional authority from intermediate appellate courts, addressing the recusal of appellate judges, has interpreted the rule to require that a motion to recuse be filed before an opinion is released. *Ex parte Ellis*, 275 S.W.3d 109, 123 (Tex. App.—Austin 2008, no pet.); *F.S. New Prods., Inc. v. Strong Indus., Inc.*, 129 S.W.3d 594, 603 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *McCullough v. Kitzman*, 50 S.W.3d 87, 88 (Tex. App.—Waco 2001, pet. denied). At the same time, case law concerning recusal at the trial court level allows for filing a motion to recuse when the movant could not have known of grounds for recusal until after the deadline has run. *Martin v. State*, 876 S.W.2d 396, 397 (Tex. App.—Fort Worth 1994, no pet.).

McCraw has filed a motion to recuse based on campaign contributions received by Justices Francis and Stoddart. Even if we were to assume that receipt of campaign contributions, standing alone, could be a valid basis for recusal, a question we address separately below, information concerning the receipt of the campaign contributions at issue in this motion was readily and publicly available long before the submission of this case on March 7, 2018. Justices Francis and Stoddart each filed campaign finance reports with the Texas Ethics Commission on January 8 and 16, 2018, respectively, showing the contributions about which McCraw now complains. McCraw declined the opportunity in the months between the filing of campaign fund receipt reports and the

submission of the case to investigate the reports that cover every justice of this Court. Had there been meritorious grounds for recusal at or before submission, the Court may have been able to assemble another panel of justices to decide the case that would not have been subject to this frivolous recusal motion.

As it stands, however, McCraw waited until after submission, awaiting the decision with the hope of a favorable result for his clients. When the Court's opinion issued in July 2018 – seven months after the campaign contributions were publicly disclosed – McCraw continued to wait until after seeking and failing to obtain a rehearing. Other courts have observed that withholding a motion to recuse, meritorious or otherwise, until a judgment is rendered is indicative of judge shopping, with a litigant waiting to see if he is to prevail and only after failing, declaring a mulligan. *See Ex parte Ellis*, 275 S.W.3d at 123; *Janicek & Ol'Don v. Kikk Inc.*, No. 14-94-00228-CV, 1995 WL 227929, *1 (Tex. App.—Houston [14th Dist.] Apr. 13, 1995, writ denied) (not designated for publication); *Cf. Rx.com v. Hruska*, No. H-05-4148, 2006 WL 3044461, (S.D. Tex. Oct. 20, 2006). The Austin Court of Appeals has indicated that where a litigant waits until after the opinion has been released, he must affirmatively explain why he was unable, with reasonable diligence, to inform himself of the grounds for recusal until after the opinion was released. *See Ex parte Ellis*, 275 S.W.3d at 123. McCraw gives no explanation for his failure to file his motion to recuse before this Court issued its opinion in this case.[1]

Although we believe the timing of McGraw's motion alone is sufficient grounds to deny it, we address the substance of the motion.

---

[1] McCraw erroneously states that it was only after the updated Texas Ethics Reports were filed this summer that this information was available to the parties. But this is contrary to the reports filed by the Justices in January 2018, which can be found on the website for the Texas Ethics Commission, www.ethics.state.tx.us. *https://www.pbs.org/wgbh/pages/frontline/shows/justice/interviews/phillips.html*

## II.    The Motion is Substantively Frivolous

Stripped to essentials, McCraw seeks to exploit the very existence of an elected judiciary as a basis for recusal.    Whether favored by judges or not,[2] Texas selects its judges by popular election and requires that they finance this process.  It has done so for more than a century.  Recognizing this reality, Texas courts have spoken definitively and clearly with respect to the effect of campaign contributions on recusal.  The mere receipt of campaign funds, in and of itself, without an indication of communication or coordination of the handling of a case, is not a basis for recusal.  *See Aguilar v. Anderson*, 855 S.W.2d 799, 802 (Tex. App.—El Paso 1993, writ denied); *J-IV Invs. v. David Lynn Mach., Inc.*, 784 S.W.2d 106, 107 (Tex. App.—Dallas 1990, no writ); *Rocha v. Ahmad*, 662 S.W.2d 77, 78 (Tex. App.—San Antonio 1983, no writ).  Such contributions do not create even the appearance of impropriety.  *See Aguilar*, 855 S.W.2d at 802.  McCraw makes no assertion, and there is no basis to assert, that the contributors about which he complains had any input in the outcome of this case.

To suggest the contributions themselves had some impact on the Court's decision in this case is equally without basis.  It is only in extreme circumstances that the amount of a contribution can support a judge's recusal from a case.  *See Estate of Nunu*, 542 S.W.3d 67, 88 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).   The contribution must have a "significant and disproportionate influence" on the judge's election.  *Id*.  For example, in *Caperton v. Massey*, 556 U.S. 868, 873 (2009), the defendant made a $3 million donation to the judge's election campaign, which was more than the total received from all of the judge's other contributors and three times the amount spent by the judge's own campaign committee.  By comparison, the contributions made to Justices Francis and Stoddart made the basis of this motion were well in line with amounts

---

[2] *See e.g.*, https://www.pbs.org/wgbh/pages/frontline/shows/justice/interviews/phillips.html (interview of former Chief Justice Tom Phillips) (lamenting popular election and concomitant fund-raising requirement); htpps://www.ecoonmoist.com/united-states/2014/08/23/the-trouble-with-electing-judges (interview with former Chief Justice Wallace Jefferson); *see also* https://www.houstonchronicle.com/opinion/editorials/article/Selecting-judges-10970302.php.

received from all the other contributors, and constituted only a small percentage of the total amounts received.

McCraw has not provided a good faith basis for a request for recusal, and he neither cites us to nor acknowledges the governing law. Accordingly, we **DENY** the motion. And had McCraw ended his motion with the complaint regarding the mere receipt of campaign contributions by two justices on the panel deciding the appeal, we would deny the motion without further comment. But McCraw did not. Rather, he has taken his disappointment with the outcome of this case to an inappropriate level by attacking the integrity of this Court, thus necessitating a response.

## III.     Referral for Disciplinary Review

We begin with the motion itself. Although separate appellate counsel handled all filings in this case for appellees from the date of notice of appeal through the denial of the motion for rehearing and the subsequent filing of a motion for en banc reconsideration, McCraw, who was appellees' trial counsel below, made his first and only appearance in this appeal with the filing of the motion to recuse. Any fair reading of the motion manifests McCraw's intention to accuse this Court of a corrupt purpose in assigning and deciding this case. He begins with the benign proposition that two justices received campaign contributions from two PACs and that these two justices were the only two to receive what he calls "coordinated gifts." From there, he states case assignment in our Court "occurs behind a veil of secrecy" and is "supposed to be random." But in this case, he surmises the assignment of the two justices to this case was not random, but was purposeful and with the intent of allowing a panel to decide a case on an improper basis. McCraw concludes his motion by asking the remaining justices to be given the chance to review the case "[un]sullied by the smell of a decision of a single three judge panel," as that is the "only way to

restore the credibility of this court in the face of a long string of statistically impossible coincidences in the process of overturning a $1,000,000 plus jury verdict."[3]

Zealous representation does not, should not, and cannot include degrading the court in the hopes of attaining a perceived advantage. *See Johnson v. Johnson*, 948 S.W.2d 835, 840 (Tex. App.—San Antonio 1997, writ denied). As courts before us have explained when faced with similar circumstances:

> It is one thing to allow an attorney his truthful criticisms against our judicial system. However, it is quite another to allow an attorney a poetic license to falsely slander a circuit judge with untrue accusations of political corruption and bribery. Such accusations represent more than a personal attack upon the particular judge, but casts [sic] slur and insult upon the judiciary as a whole.

*In re Maloney*, 949 S.W.2d 385, 387 (Tex. App.—San Antonio 1997, no writ) (en banc) (per curiam) (quoting *Cerf v. State*, 458 So.2d 1071, 104 (Fla. 1984)). Moreover, such an attack on the integrity of the court cannot go ignored:

> A distinction must be drawn between respectful advocacy and judicial denigration. Although the former is entitled to a protected voice, the latter can only be condoned at the expense of the public's confidence in the judicial process. Even were this court willing to tolerate the personal insult levied by [counsel], we are obligated to maintain the respect due this Court and the legal system we took an oath to serve.

*Id.*; *Merrell Dow Pharmaceuticals, Inc.*, 953 S.W.2d 706, 732 (Tex. 1997) (order on mot. for reh'g) (providing counsel opportunity to respond as to why court should not make referral to disciplinary authorities, prohibit attorney from practicing in Texas, and imposing a monetary sanction based on content of motion for rehearing); *see also Sears v. Olivarez*, 28 S.W.3d 611, 616 (Tex. App.—Corpus Christi 2000, no pet.) (forwarding opinion to Office of General Counsel after concluding counsel alleged justices committed gross judicial misconduct and tortious behavior); *Johnson*, 948 S.W.2d at 840–41 (sanctioning counsel for disparaging remarks about trial court and forwarding

---

[3] The correctness of the panel's decision overturning the jury verdict is confirmed by an en banc opinion issued this same day on appellees' motion for reconsideration.

opinion to Office of General Counsel, concluding that substantial question had been raised about counsel's honesty, trustworthiness, or fitness as lawyer).

Lawyers "should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." TEX. DISCIPLINARY R. PROF'L CONDUCT preamble 4, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013). "While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process." *Id.*

Rule 8.02(a) of the Disciplinary Rules provides:

A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory official or public legal officer, or of a candidate for election or appointment to judicial or legal office.

*Id.* Rule 8.02(a).

Because McCraw's assertions in his motion to recuse Justices Francis and Stoddart are direct attacks on the integrity of the justices of this Court and on this Court as a whole, we are referring this matter to the Office of General Counsel of the State Bar of Texas. As the motion alone is sufficient to warrant a referral to the disciplinary authorities, we do not address McCraw's extrajudicial statements made after the opinion issued and again after he filed his motion for recusal and leave those statements to the discretion of those involved in the grievance process.

We therefore **ORDER** the Clerk of the Court to forward a copy of this order and McCraw's September 25, 2018 amended motion to recuse to the Office of the General Counsel of the State Bar of Texas for investigation and any other action it may deem necessary.

/s/    CAROLYN WRIGHT
CHIEF JUSTICE

170372F.P05